## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

**JERRY UNDRE STEWART**                                              **PETITIONER**

**v.**                                                          **No. 3:19CV55-GHD-JMV**

**WARDEN SCOTT MIDDLEBROOKS**                                        **RESPONDENT**

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Jerry Undre Stewart for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has responded to the petition; the petitioner has replied, and the matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2254

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*. Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915).

## Facts

1. the Mississippi Court of Appeals summarized the facts:

¶ 2. The prosecution was built on the testimony of two accomplices turned State's witnesses, Tresten Chatman and Christopher Anderson. There were some differences in their accounts, but both agreed that McKay and Chatman had arranged for Stewart to buy a kilogram of cocaine from an associate of McKay's in Memphis, and the cocaine turned out to be mostly baking soda. On the way back from the exchange, Stewart summoned Anderson, Maggett, and Taylor for assistance. McKay's hands were bound, and he was given a phone and told to get the money back. After McKay could not do it, they took him to a remote location, where Chatman was ordered to shoot McKay or be killed himself. Chatman fired one or more shots, followed by Maggett, and depending on the account, Taylor.

¶ 3. Chatman testified that his family had been threatened if he talked. But Chatman was soon arrested, and after initial denials, he implicated Stewart, Taylor, and Anderson—and, eventually, Maggett. Anderson's account agreed in most respects, but he, like Chatman, appeared to minimize his own culpability.

¶ 4. Stewart testified in his own defense. He admitted to being involved in the drug deal, but according to him, his role was just to drive the vehicle. Anderson and Stewart's brother were the real purchasers of the cocaine. Stewart claimed that he parted ways with Chatman, Anderson, and McKay after returning from the drug deal, with the implication that the State's witnesses had murdered McKay and were trying to pin it on him. Stewart and Maggett also produced alibi witnesses who claimed to have been with them at the time of the killing.

*Maggett*, 230 So. 3d at 726.

## Procedural Posture

Jerry Undre Stewart ("Stewart" or "Petitioner") is currently in the custody of the Mississippi Department of Corrections ("MDOC") and housed at the Wilkinson County Correctional Facility in Woodville, Mississippi. On November 12, 2014, a jury convicted Stewart of capital murder (Count I) and possession of a firearm by a convicted felon (Count II) in the Second Judicial District Circuit Court of Bolivar County, Mississippi, Cause No. 2012-094-CR2. *See* State Court Record ("SCR"), Cause No. 2015-KA-00215-COA, Vol. 5, pp. 45-48.[1] The trial court sentenced Stewart to serve a term of life without the possibility of parole in Count I and a term of ten (10) years in Count II, under the supervision and control of the MDOC. *Id*.

On December 19, 2015, Stewart appealed his convictions and sentences to the Mississippi Supreme Court, raising the following eight issues, as stated by appellate counsel:

I.      Whether the trial court erred in not allowing appellants to impeach Christopher Anderson's testimony with two prior felony convictions.

II.      Whether the trial court committed reversible error in overruling appellants' motion for severance of parties and severance of counts.

III.      Whether the indictment charging appellants with capital murder violated appellants' rights not to be placed in jeopardy twice by not identifying the victim in the underlying felony of kidnapping.

IV.      Whether the trial court committed reversible error in not allowing appellant to question Christopher Anderson with statements made by Tresten Chatman and to question Tresten Chatman with statements made by Christopher Anderson.

V.      Whether the trial court committed reversible error in denying appellants' motion for a directed verdict of acquittal at the close of the [S]tate of Mississippi['s] case in chief, and denial of motion for judgment of acquittal notwithstanding the verdict or motion for new trial.

---

[1] References to the state court record from Stewart's direct appeal of his convictions and sentences are designated as "SCR" with the appropriate volume and page number.

VI.   Whether the trial court committed reversible error in denying the admission into evidence the cellphone records of Appellant Maggett, Christopher Anderson and the cellphone records of Henry Boyles, Sabrina Chatman and Donnis Chatman.

VII.   Whether the conduct of the prosecutor lead to appellants not receiving a fair trial.

VIII.   Whether the [S]tate of Mississippi knowingly allowed Christopher Anderson to testify falsely.

SCR, Cause No. 2015-KA-00215-COA, Brief of Appellants.[2]

On January 19, 2016, Stewart filed a *pro se* "Supplemental Brief of the Appellant," raising the following additional issues:

IX.   Whether Stewart was denied his fundamental and constitutional right to effective assistance of counsel and to a fair trial due to counsel's failure to object to numerous instances of prosecutorial misconduct.

X.   Whether the trial court erred in overruling Stewart's objection to the [S]tate cross-examining Charkita Primer about facts which were not in evidence.

XI.   Whether Stewart was denied his fundamental and constitutional right to a fair trial due to prosecutorial misconduct.

SCR, Cause No. 2015-KA-00215-COA, Supplemental Brief of Appellant.  The State filed a brief in response to counsel's brief and Stewart's *pro se* supplemental brief.  *See* SCR, Cause No. 2015-KA-00215-COA, Brief of Appellee.

On December 13, 2016, the Mississippi Court of Appeals affirmed Stewart's convictions and sentences.  *Maggett v. State*, 230 So. 3d 722 (Miss. Ct. App. 2016), *reh'g denied*, April 25, 2017, *cert. denied*, Nov. 16, 2017.  In affirming, the Mississippi Court of Appeals first addressed the issues raised by appellate counsel, holding that Rule 609(a) of the Mississippi Rules of Evidence ("Miss. R. Evid.")

---

[2] Mr. Stewart's counsel filed a joint Appellant's Brief with Stewart's co-defendant, Ladell Maggett, on direct appeal.

(regarding the use of prior convictions to impeach a witness' testimony) applies to convictions less than ten years old; therefore, since witness Christopher Anderson's convictions were more than ten years old and fell under the purview of Rule 609(b), the trial court did not abuse its discretion. *Maggett*, 230 So. 3d at 727.

The appellate court further concluded that the trial court did not commit reversible error in overruling Stewart's motion for severances of parties and severance of counts. "This argument fails because the doctrine of retroactive misjoinder can only apply when one of the counts has been vacated or otherwise found to be invalid, and the appealing defendant was prejudiced by being tried on the supported and unsupported allegations together." *See Williams v. State*, 37 So. 3d 717, 725-26 (Miss. Ct. App. 2010). This scenario did not occur in Mr. Stewart's case, as the court affirmed both counts for all of the defendants. *Id*.

With regard to Stewart's claim regarding whether the indictment charging him with capital murder placed him in double jeopardy by not identifying the victim in the underlying felony of kidnapping, the court noted that this objection was not raised before the trial court – and such nonjurisdictional defects may not be challenged for the first time on appeal without a showing of cause and actual prejudice. *Id*. at 728. As upholding the jury's verdict would not sanction an unconscionable injustice, the court found no merit to the issue. *Id*.

The state appellate court also discussed Stewart's claims that the trial court committed reversible error by not allowing him to question co-defendant Christopher Anderson ("Anderson") with statements made by co-defendant Tresten Chatman ("Chatman") and *vice versa* under the "Opposing Party's Statement" exception to the hearsay rule, Rule 801(D)(2) of Mississippi Rules of Evidence. The appellate court found the claims to be without merit, as witnesses for the State are not

party opponents under the hearsay exception in Rule 801(d)(2) of the Mississippi Rules of Evidence.[3]

*Id*. at 729.

The appellate court also found that the trial court did not commit reversible error in denying Stewart's motion for directed verdict at the close of the State's case in chief or in the denial of Stewart's motion for judgment notwithstanding the verdict or motion for new trial. As the court noted:

> The record reflects that Chatman and Anderson were thoroughly cross-examined on their initial denials and on the inconsistencies between their testimonies at trial. The jury was also properly instructed that it should view the testimony of accomplices with "great care and caution," and it still elected to convict. We cannot find the convictions here to be unsupported by sufficient evidence.

*Id*. at 730.0

Next, the appellate court addressed Stewart's challenge to the trial court's refusal to admit certain cellphone records into evidence. The trial court refused to admit the records because they were not authenticated, and Stewart argued that, even if the records are not self-authenticating, they would have been admissible under the "catch all" hearsay exception found in MRE Rule 803(24). *Id*. at 732. The appellate court found that hearsay exceptions and authentication are separate issues; thus, there

---

[3] Rule 801(d)(2) reads:

(2) An Opposing Party's Statement. The statement is offered against an opposing party and:

(A) was made by the party in an individual or representative capacity;

(B) is one the party manifested that it adopted or believed to be true;

(C) was made by a person whom the party authorized to make a statement on the subject;

(D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or

(E) was made by the party's coconspirator during and in furtherance of the conspiracy.

Miss. R. Evid. 801.

was no authentication error in the exclusion of the phone records. *Id*.

The appellate court also addressed Mr. Stewart's argument that he did not receive a fair trial as the result of prosecutorial misconduct, particularly during the State's closing arguments. The Mississippi Court of Appeals found this argument to be without merit because no objections were made to questions or statements during the closing arguments of the State and, as such, Stewart waived these issues, and they were barred on appeal. *Id*.

Finally, the Mississippi Court of Appeals found that Mr. Stewarts's claim alleging prosecutorial misconduct in allowing co-defendant, Christopher Anderson, to testify "falsely" was wholly without merit as "[t]his contention is based on a purported guilty plea transcript that is not found in the record, and we cannot consider evidence outside the record." *Id*. at 733.

On February 12, 2018, Stewart, *pro se*, filed a "Motion for Leave to Proceed in the Trial Court with a Petition for Post-Conviction Relief" (collectively referred to herein as the "Petition for Post-Conviction Relief") in the Mississippi Supreme Court, Cause No. 2018-M-00216, in which he raised the following issues:

**Ground One**:  That the [S]tate violated Stewart's 14th Amendment Due Process rights when it failed to correct the false testimony of its two principal witnesses, Chatman and Anderson.

**Ground Two**:  That Stewart was deprived of his 14th Amendment Due Process right to effective assistance of counsel on direct appeal when counsel failed to add Anderson's guilty plea transcript to the appellate record.

**Ground Three**:  That the trial court, pursuant to M.R.E. 902 (11) (C), abused its discretion and violated Stewart's 14th Amendment rights to due process of law when the trial court granted the [S]tate's objection and denied the admissibility of Chatman's cell phone records as the [S]tate was procedurally barred from raising said objection.

**Ground Four**:  That Stewart was denied his fundamental and constitutional right to effective assistance of counsel due to counsel's failure to object to the [S]tate being allowed to object to the admissibility of Chatman's cellphone records.

- 7 -

**Ground Five**:  That the trial court abused its discretion in denying the admissibility of Chatman's cell phone records.

**Ground Six**:  The state violated Stewart's fundamental due process right to a fair trial when the [S]tate made false, impressible, inflammatory and extremely prejudicial comments during its closing argument.

**Ground Seven**:  That the [S]tate violated Stewart's fundamental and constitutional due process right to a fair trial when it personally vouched for the credibility of its two principal witnesses, Chatman and Anderson.

**Ground Eight**:  That Stewart's 14th Amendment Due Process right to confront the witness, Anderson, against him was violated when the trial court denied admissibility of Anderson's prior felony convictions.

**Ground Nine**:  That Stewart's fundamental and constitutional due process right to a fair trial was violated when the trial court knowingly allowed the [S]tate to knowingly sponsor false testimony.

**Ground Ten**:  That Stewart was deprived his fundamental and constitutional right to effective assistance of counsel and to a fair trial when counsel failed to object to numerous instances of prosecutorial misconduct. SCR, Cause No. 2018-M-216, Misc. Case Folder, pp. 19-69.

After reviewing Stewart's Petition for Post-Conviction Relief, the Mississippi Supreme Court issued an Order on October 23, 2018, denying it.  The court, for the purpose of clarity, consolidated Stewart's allegations into six claims.  Regarding Stewart's claim that the State violated his due process rights by failing to correct false testimony, the court found the issue to be waived, as the claim was "capable of determination at trial and/or on direct appeal," and Stewart failed to show "cause and actual prejudice" to "grant relief from the waiver."  *Id*. (citing Miss. Code Ann. § 99-39-21(1).  In response to Stewart's claim that the trial court erred in refusing to admit cellphone records, the panel found that his challenge to the merits of the trial court's ruling was barred by *res judicata* – and that he failed to show cause and actual prejudice to grant relief from the waiver regarding his challenge to the timeliness of the State's objection.  *Id*.  Next, the court found Stewart's allegations of due process violation by the State during its closing argument to be without merit, as they were capable of

determination at trial or on direct appeal. *Id.* As to Stewart's claim that the trial court infringed upon his confrontation rights in denying his motion to impeach a witness with his prior conviction, the court found that the claim was barred by *res judicata*. Finally, the panel found that Mr. Stewart's allegations of ineffective assistance of counsel failed to meet the standard of *Strickland v. Washington* and were thus without merit. *Id.*

On March 12, 2019, Jerry Undre Stewart signed the instant petition, which was filed in this court on March 18, 2019, and raised substantially the same claims raised in his Petition for Post-Conviction Relief and direct appeal:

> **Ground One**: The trial court infringed upon Stewart's fundamental and constitutional right to confront the witness, Anderson, against him when it erroneously denied admissibility of Anderson's prior convictions on the grounds that the convictions were more prejudicial than probative.
>
> **Ground Two**: The State violated Stewart's 14th Amendment due process rights when it failed to correct the false testimony of is two principal witnesses, Chatman and Anderson.
>
> **Ground Three**: Stewart was derived his 14th Amendment due process right to effective assistance of counsel on direct appeal when appellate counsel failed to add Anderson's guilty plea transcripts to the appellate records.
>
> **Ground Four**: The improper conduct of the prosecutor, during examination of witnesses, lead to Stewart not receiving a fair trial in violation of Stewart's fundamental and constitutional right to due process of law.
>
> **Ground Five**: The State violated Stewart's fundamental and constitutional due process right to a fair trial when the State made false, impermissible, inflammatory and extremely prejudicial comments during its closing argument.
>
> **Ground Six**: The State violated Stewart's fourteenth amendment right to due process of law when it personally vouched for the credibility of its two most important witnesses, Chatman and Anderson.
>
> **Ground Seven**: The trial court, pursuant to M.R.E. 902(11)(C), abused its discretion and infringed upon Stewart's sixth and fourteenth amendment rights when the trial court granted the State's objection and denied the admissibility of Chatman's cellphone records, as the State was procedurally barred from raising said objection.
>
> **Ground Eight**: Stewart was denied his sixth amendment right to effective assistance of counsel due to trial counsel's failure to object to the State being allowed to object to the admissibility of Chatman's cellphone records.

**Ground Nine**: The trial court abused its discretion in denying the admission of Chatman's cellphone records.

**Ground Ten**: Stewart's fundamental and constitutional due process right to a fair trial was violated when the trial court knowingly allowed the State to sponsor false testimony.

**Ground Eleven**: Stewart was deprived his fundamental and constitutional right to effective assistance of counsel and to a fair trial due to counsel's failure to object to numerous instances of prosecutorial misconduct.

**Ground Twelve**: The indictment charging Stewart with capital murder violated Stewart's rights to not be placed in jeopardy twice by not identifying the victim of the underlying felony of kidnapping.

**Ground Thirteen**: The trial court committed reversible error in denying appellant's motion for a directed verdict of acquittal at the close of the State of Mississippi's case in chief, and denial of motion for judgment of acquittal notwithstanding the verdict or motion for new trial

**Ground Fourteen**[4]: The cumulative effect of the numerous instances of prosecutorial misconduct along with the trial court's errors, augmented by trial counsel's deficient performance throughout Stewart's trial, rendered Stewart's trial fundamentally unfair.

*See* ECF doc. 1; *see also* ECF docs. 2 and 2-1.

### Grounds Reviewed on the Merits in State Court

The Mississippi Supreme Court has already considered all fourteen grounds in the instant petition on the merits and decided those issues against the petitioner; hence, these claims are barred from *habeas* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[4] The instant Petition for Writ of *Habeas Corpus* includes a Ground Fourteen. However, the pleading entitled "Memorandum of Law in Support of Petition for Writ of *Habeas Corpus*" does not include a Ground Fourteen. *See* ECF docs. 1, 2 and 2-1.

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to any grounds of the petitioner's claim.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is

the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

### Grounds Three, Eight, and Eleven: Ineffective Assistance of Counsel

In Grounds Three, Eight and Eleven, Mr. Stewart alleges that his trial and appellate counsel provided ineffective assistance under *Strickland v. Washington*. ECF doc. 1. As set forth above, he previously alleged ineffective assistance of trial and appellate counsel in his direct appeal and Petition for Post-Conviction Relief, raising substantially the same claims as in the instant petition. The Mississippi Supreme Court denied these claims, finding that they did not meet the standard found in *Strickland*, *supra*, and the claims were without merit. *See* Exhibit B.[5]

### Ineffective Assistance of Counsel

The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the

---

[5] The exhibits referenced in the instant memorandum opinion may be found attached to the State's Response to the petition.

presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

> ***Ground Three –*** **Ineffective Assistance of Counsel: Appellate counsel failed to add Anderson's guilty plea transcripts to the appellate records.**

Mr. Stewart argues in Ground Three that the appellate counsel was ineffective for failing to add the guilty plea transcript of co-defendant Anderson to the record in his appeal. *See* ECF doc. 2, p. 37. He raised this claim in his Petition for Post-Conviction Relief, and the Mississippi Supreme Court found it to be without merit. *See* Exhibit B.[6] "To meet the prejudice prong of the *Strickland* test, the [petitioner] may not simply allege but must 'affirmatively prove' prejudice." *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir. 1986), *cert. denied*, 476 U.S. 1143 (1986) (citing *Celestine v. Blackburn*, 750 F.2d 353, 356 (5th Cir. 1984)). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S.Ct. at 792. Speculation cannot establish prejudice, and conclusory allegations are insufficient to obtain federal *habeas corpus* relief. *Bradford v. Whitley*, 953 F.2d 108,

---

[6] The Mississippi Court of Appeals also discussed this claim after Stewart's direct appeal, where he argued prosecutorial misconduct for allowing Anderson to "testify that he had not gone to Stewart's house at a certain point, after he supposedly admitted he had done so when he pled guilty to charges relating to the incident." *Maggett* at 733.

1012 (5th Cir. 1992); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990). Further, a petitioner must prove both that the outcome of his trial would have been different "but for counsel's alleged errors" – *and* that "the result of the proceedings was fundamentally unfair or unreliable." *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)); *Sharp v. Johnson*, 107 F.3d 282, 286, n.9 (5th Cir. 1997).

First, the court notes that conclusory ineffective assistance of counsel claims such as this do not merit federal *habeas corpus* relief. *See, e.g.*, *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002); *see also Green v. Johnson*, 160F.3d 1029, 1042 (5th Cir. 1998). In addition, "counsel has wide latitude in deciding how best to represent a client...." *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003). When analyzing whether counsel's performance was adequate, the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 688-89. Counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Strickland*, 466 U.S. at 673; *Pape v. Thaler*, 645 F.3d 281, 289-90 (5th Cir. 2011).

In reviewing the performance of appellate counsel, the two-pronged *Strickland* test applies. *See Evitts v. Lucey*, 469 U.S. 387, 397-399 (1985). The controlling law for analyzing ineffective assistance of appellate counsel may be found in *Jones v. Barnes*, 463 U.S. 745 (1985). The Court held in *Evitts* that appellate counsel has broad discretion in determining which issues are more likely to be successful – and need not raise every "colorable" claim on appeal. *Jones*, 463 U.S. at 751-754. Mr. Stewart has, however, presented nothing to support this ground for relief. As such, the Mississippi Supreme Court's denial of this claim of ineffective assistance of appellate counsel was not contrary to,

nor an unreasonable application of, clearly established federal law.  Mr. Stewart's claim of ineffective

assistance of counsel is without merit.

**Ground Eight:  Trial Counsel Was Ineffective for Failing to Object to the
State's Challenge to the Admissibility of Chatman's Cell Phone Records.**

In this claim of ineffective assistance of counsel, Stewart alleges his trial counsel was

ineffective for failing to object to the State's challenge to the admissibility of Chatman's cell phone

records.  *See* ECF doc. 2, p. 61.  This ground for relief is directly contradicted in the record, which

reveals that Mr. Stewart's trial counsel argued that Chatman's cellphone records were admissible.

During direct examination of the State's witness (Chatman), the following dialogue took place

between the State, Stewart's trial counsel, and the trial judge:

> MS. MITCHELL:       Your Honor, we don't believe that the records show that they
> are his, and we object to them being introduced.  Nothing shows that those are records
> of Tresten Chatman.
>
> THE COURT:  Why don't you ask him if he's going to deny that dadgum phone call,
> before you even go through all this trouble.
>
> MR. ALKEBU-LAN:  I got to get these records in.
>
> THE COURT:            Why?
>
> MR. ALKEBU-LAN:  Because these are phone calls he made.
>
>                                            ***
>
> THE COURT:  Okay, I don't want to hear any more.  I've heard enough.  Okay, the
> argument is very simple.  You have records without his name.  They are not
> substantiated.  You want to draw some conclusion that his relatives have the phone and
> gave it to him.
>
> Okay.  All right.  Return to your seat, please.
>
>                                            ***
>
> THE COURT:  The reason the Court was a little confused is that you're going under
> 903 -- 902.llA.  In there, there's a little checklist that we use, Mr. Alkebu-lan, the, uh --
> with regard to the notice to the District Attorney, you know, we could have -- you

- 15 -

indicated the other day you had these records, and so that was fine. The State didn't raise it and I didn't think that, you know, the notice and all that. But the indicia of reliability is part of the things that we need to look at, trustworthiness. Well, obviously, that's been raised. You and Mr. Shah, on the other hand, looked at it's obvious that the records are his because it's his families and this, that and the other. I gave you the answer, which is something that you could have done without this recess and that's what baffled me. But I guess just to clear it out, that's fine. Is to ask him whether they ever -- loaned you the phone, or gave you the phone, did you make the calls. You know, since that would have cured it without all of this, I just was curious as to what all we are arguing about. But since that is the answer, let's do that.

    MR. ALKEBU-LAN: Okay.

SCR, Vol. 11, pp. 49-52. Trial counsel again, during direct examination of the State's witness

(Anderson), tried to admit the cellphone records of Chatman, arguing:

    MR. ALKEBU-LAN: Your Honor, I need to—I prefer now, to make a record on the admissions of the phone records of Tresten Chatman's sister.

    THE COURT: Well, the record is already made. We've already gone through that. I think it's clear that—what, we didn't allow the records, did we?

    MR. ALKEBU-LAN: That's correct.

    THE COURT: Okay. Well, that's clear in the record.

    MR. ALKEBU-LAN: I would like to make a record, please, sir.

    THE COURT: Well, go ahead and make it.

SCR, Vol 14, p. 1075. Petitioner's trial counsel further argued as follows:

    MR. ALKEBU-LAN: According to the prosecutor's argument, these records would go to the weight of admissibility for the jury to decide and not their admissibility. And they show, as I've mentioned here, Chatman says his sister would have no reason to call McKay. That's his buddy. And the records show the numerous times Chatman calls McKay. And the sister would have no reason to call Uncle, nor would the sister have any reason to call Anderson. And they are all clearly shown where Chatman uses this phone to make these -- to call McKay, Anderson and Uncle. So the records go -- the prosecutor's arguments goes to the weight, not whether they're -- the weight of the evidence, not whether they're admissible, your Honor.

- 16 -

> THE COURT: The records, as the DA said, there's not -- they do not indicate that they are Chatman's records. Under 803, the prejudicial effect, the Court thinks, would outweigh the probative value; would confuse the jury. He also testified that the phone was used by others. Can't remember the phone number. There is no sponsor for the records, you know. So I'm going to deny it, at this time. If y'all have any cases on point, the Court would be glad to look at them. Let's move on. Are you ready to call your next witness?

*Id* at 1078-80. Trial counsel indeed argued against the State's objection to the admissibility of Chatman's cellphone records. Hence, trial counsel's representation of his client did not rise to the level of ineffective assistance of counsel under *Strickland, supra*. As such, the Mississippi Supreme Court's denial of this claim of ineffective assistance of trial counsel was neither contrary to, nor an unreasonable application of, clearly established federal law. This claim of ineffective assistance of counsel is without merit.

### Ground Eleven:  Counsel Was Ineffective for Failing to Object to Many Instances of Prosecutorial Misconduct

In the memorandum Mr. Stewart presented in support of his petition, he argues that various acts by the prosecutor rise to the level of misconduct – and that defense counsel's decision not to object to the alleged misconduct rose to the level of ineffective assistance of counsel. The following is a brief description of each act:

(1) The prosecutor asked questions about Mr. Stewart's children, who had struggled in school, and asked whether they struggled because they were living with him;

(2) The prosecutor suggested that the jury disregard a fact in evidence as irrelevant;

(3) The prosecutor suggested that Stewart lied on the stand about the documentation he used to rent a car;

(4) During closing arguments, the prosecutor suggested that Stewart lied about leaving his car keys with accomplice Christopher Anderson in order to fabricate a reason for Anderson to come to Stewart's home;

(5) Stewart testified during cross-examination that he did not own a night club; during closing, however, the State argued that the business Stewart called a restaurant was actually a night club;

- 17 -

(6) The prosecutor told the jury during closing that a crime scene analyst testified that the duct tape on the truck was old and aged and was not the same as the duct tape on the victim's hands. The analyst did not, however, explicitly say that the duct tape was not the same (though he did note that the duct tape on the window was old, worn, and inconsistent with tape being only a couple of days old);

(7) The prosecutor told the jurors that the accomplice witnesses "came here to testify truthfully;"

(8) The prosecutor told the jury that Stewart is the one who grabbed the phone from the victim and told another person, "if I don't get my money back, you're going to find this bitch dead on a country road," when there is no evidence in the record that Stewart (rather than someone else) did so;

(9) The prosecutor told the jury to put themselves in the shoes of witnesses Chatman and Anderson by noting that everyone has told a lie, but that does not mean they lie about everything;

(10)      The prosecutor noted during closing arguments that Stewart's girlfriend had testified on his behalf and had presented herself as unbiased; the prosecutor then argued that she had proved her bias because she had borne his child about five days earlier, had come to testify on his behalf, and had stayed in the courtroom with her days-old child to see the outcome. Stewart argues that, in noting the girlfriend's presence in the courtroom, the prosecutor introduced facts not in evidence, and defense counsel was deficient in failing to object to this.

First, none of the prosecutor's actions rose to the level of prosecutorial misconduct. As the term "closing arguments" suggests, counsel is permitted to make inferences from the evidence and present argument to the jury during closing. That is what counsel did in Mr. Stewart's examples (2) through (10). The conduct described in example (1) occurred during examination of Mr. Stewart, the prosecutor asked whether his children were struggling in school because of him. Stewart's girlfriend had already testified that the children had struggled in school; the prosecutor merely sought to discover the reason they struggled. As any rate, Mr. Stewart states in his memorandum [2] in support of his *habeas corpus* petition that the kids' performance in school is "mostly irrelevant." Hence, he has not shown that counsel's decision to forego objecting to the prosecution's questions would have altered the outcome of his trial. As such, he has not proved that the decision – even if deficient –

- 18 -

caused prejudice to his legal position. For this reason, he has not met the standard to prove ineffective assistance of counsel under *Strickland*. Any objection to these actions by the prosecutor would have been fruitless. An attorney is not ineffective for failure to raise meritless objections. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).

In addition, the decision regarding whether to pose objections is a matter of trial strategy, which "enjoys a strong presumption of effectiveness." *See Pape v. Thaler*, 645 F.3d 281, 291 (5th Cir. 2011). Indeed, strategic decisions "are given a heavy measure of deference and should not be second-guessed," and the court has been "careful not to second-guess legitimate strategic choices." *See Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993). The plaintiff's allegations in Ground Eleven of the instant petition are thus without merit. The state court decision was neither contrary to well-established federal law according to the Supreme Court; nor did it involve an unreasonable determination of the facts in light of the evidence presented. This ground for *habeas corpus* relief will be denied.

### Grounds One, Seven, and Nine: Evidentiary Rulings of the Trial Court

In Grounds One, Seven and Nine, Mr. Stewart argues that the trial court abused its discretion in its rulings on evidence, particularly the cellphone records of Chatman. *See generally* ECF doc. 1. Further, Mr. Stewart alleges that the trial court infringed upon his fundamental and constitutional right to confront one of the State's witnesses (Anderson). *Id*. He raised these issues on direct appeal and on post-conviction review, and the Mississippi Court of Appeals and Mississippi Supreme Court denied Stewart relief in both instances. *See* Exhibits A and B[7].

---

[7] The exhibits referenced in this memorandum opinion may be found attached to the State's response to Stewart's petition for a writ of *habeas corpus*.

**Ground One: Denial of the Right to Confront a Witness**

In Ground One, Mr. Stewart alleges that the trial court

…infringed upon Stewart's confrontation rights in erroneously precluding Stewart from impeaching Anderson, a key prosecution witness, with his two prior felony convictions, and the contrary ruling of the Mississippi Court of Appeals is an objectively unreasonable application of Mississippi Rules of Evidence (M.R.E.) 609(b)…

*See* ECF doc. 2, p. 17. The Mississippi Court of Appeals discussed the court's denial of Stewart's

allegations:

¶ 9. This authority is simply inapposite, as Rule 609(a) applies to convictions less than ten years old, and Anderson's convictions were more than ten years old. Rule 609(b) applies to convictions over ten years of age, stating:

(b)  Limit on Using the Evidence After 10 Years: This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:

(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and

(2) the proponent gives an adverse party reasonable written notice of intent to use it so that the party has a fair opportunity to contest its use.

The record reflects that the trial court properly considered this issue under Rule 609(b). No abuse of discretion has been shown.

*Maggett*, 230 So. 3d at 727. Mr. Stewart also raised this issue in his Petition for Post-Conviction

Relief, with the Mississippi Supreme Court finding that the claim was "barred by *res judicata*." *See*

Exhibit B.

In Ground One, Mr. Stewart claims that he was not allowed to confront Anderson when the

trial court denied admissibility of Anderson's two prior felony convictions. In all criminal

prosecutions, state as well as federal, the accused has a right, guaranteed by the Sixth and Fourteenth

Amendments to the United States Constitution, "to be confronted with the witnesses against him."

U.S. Const., Amdt. 6; *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (applying Sixth Amendment to the States). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Fifth Circuit Court of Appeals has held that "Confrontation Clause violations are subject to harmless error analysis." *Fratta v. Quarterman*, 536 F.3d 485, 507-508 (5th Cir. 2008), *see also Horn v. Quarterman*, 508 F.3d 306, 322 n. 24 (5th Cir. 2007)(citations omitted); *Delaware v. Van Arsdall,* 475 U.S. 673, 684, (1986). The test for a determination of whether the error was harmless in a federal *habeas corpus* proceeding is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Fratta,* 536 F.3d at 508 (quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)).

First, Mr. Stewart was not denied the right to confront the witness, as the witness was present in the courtroom, testified, and Stewart's counsel cross-examined him. Nonetheless, even if Stewart had been denied the right to confront Anderson, nothing in the record shows that he suffered any harm or that the lack of confrontation influenced the jury's verdict.

**Grounds Seven and Nine:  Trial Court's Evidentiary Rulings**

In Grounds Seven and Nine, Mr. Stewart argues that the trial court's erred in its evidentiary rulings by denying admission of state witness Chatman's cellphone records into evidence. *See generally* ECF doc. 1. A state court evidentiary ruling presents a valid *habeas corpus* claim only if it violates a specific constitutional right or causes the petitioner's trial to be fundamentally unfair. *Johnson v. Puckett,* 176 F.3d 809, 820 (5th Cir. 1999) (citing *Cupit v. Whitley,* 28 F.3d 532, 536 (5th Cir.1994). In other words, a state prisoner may obtain relief under 28 U.S.C. § 2254 only if he is held "in custody in violation of the Constitution or laws or treaties of the United States." *Engle v. Isaac,*

456 U.S. 107, 118 (1981). A "mere error of state law is not a denial of due process;" otherwise, "every erroneous decision by a state court on state law would come [to this court] as a federal constitutional question." *Id.* at 121 n.21 (citations and internal quotations omitted).

When reviewing state court evidentiary rulings, a federal court's *habeas corpus* ruling "'is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness' under the Due Process Clause." *Castillo v. Johnson,* 141 F.3d 218, 222 (5th Cir. 1998) (citations omitted); *see also Jackson v. Johnson,* 194 F.3d 641, 656 (5th Cir. 1999). The "erroneous admission of prejudicial testimony does not justify *habeas* relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination." *Jackson,* 194 F.3d at 656. As discussed below, Mr. Stewart has not made this showing.

On direct appeal, Mr. Stewart argued that the trial court "erred in refusing to find the [cell phone] records self-authenticating under Mississippi Rule of Evidence 902(11) as certified records of a regularly conducted activity." *Maggett*, 230 So. 3d at 731 (¶30). However, the Mississippi Court of Appeals held that

> …Rule 902(11)(C) requires that "the proponent give[ ] notice to adverse parties of the intent to offer the records as self-authenticating under this rule and provide[ ] a copy of the records and of the authenticating certificate" so that the adverse party has "a fair opportunity to consider the offer and state any objections."

*Id*. As set forth above, the defense did not provide the notice required under Rule 902(11)(C). Though Stewart's counsel argued that he provided the cellphone records to the State during discovery, the court noted that "[t]he rule specifically requires that the notice be of the intent to offer the documents as self-authenticating; providing them in discovery is not enough." *Id*. The trial court's ruling on evidence was a direct application of state law, and the ruling did not constitute a denial of fundamental fairness. This ground for relief is without substantive merit.

In Grounds Seven and Nine, Mr. Stewart has not overcome the deference afforded to the findings of fact made by the state appellate court. *See* 28 U.S.C. § 2254(e)(1). As such, the state court's decision was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. In addition, he has not shown that the state court did not make an unreasonable determination of the facts in light of the evidence presented. *See Williams v. Taylor, supra*. As such, Mr. Stewart's request for *habeas corpus* relief in Grounds One, Seven and Nine of the instant Petition will be denied.

### Grounds Two, Four, Five, Six and Ten:  Prosecutorial Misconduct or Error

In Grounds Two, Four, Five, Six and Ten, Mr. Stewart argues that the prosecutor violated his Fourteenth Amendment Due Process rights by allowing alleged false testimony of two witnesses (Chatman and Anderson) – and by making certain statements during the State's closing argument. *See generally* ECF doc. 1. Mr. Stewart raised these issues on direct appeal and on post-conviction review, and the Mississippi Court of Appeals and Mississippi Supreme Court denied Stewart relief in both instances. *See* Exhibits A and B.

### Ground Two:  Failure to Correct "False" Testimony of Chatman and Anderson

In Ground Two, Stewart alleges that the prosecutor "failed to correct false testimony" of accomplices Chatman and Anderson. See ECF doc. 2, p. 21. The two witnesses offered conflicting testimony regarding who shot the victim and how many times each shooter fired. Chatman testified that he fired the first shot under duress, then handed the revolver to Kelvin Taylor, who fired two more shots. Tr. Vol. X at 621-622. Anderson, however, testified that Chatman fired the revolver four or five times, and Taylor never fired a shot. Tr. Vol. XIV at 1138. Mr. Stewart argues that one of the witnesses must have been lying, and the prosecutor erred for not sorting out this discrepancy before putting on the two witnesses.

- 23 -

Similarly, Chatman testified that Anderson came to Stewart's home after Anderson, Chatman, and McKay returned from conducting a drug deal in Memphis – and that upon arrival, Anderson opened the package and discovered that the drugs inside were mixed with white powder. Tr. Vol. XI at 602. Anderson, however, testified that he did not enter Stewart's home on the night in question. Tr. Vol. XII at 1036. Again, Mr. Stewart argues that one of these witnesses was lying because their accounts of events cannot be reconciled. In addition, at Anderson's change of plea hearing, the prosecutor set forth the facts the State intended to prove should the case go to trial, including that, upon arriving at Clarksdale after conducting the Memphis drug deal, "Kelvin Taylor, who is another codefendant and possibly Mr. Anderson arrived at [Mr. Stewart's] house." Doc. 2-1 at 141. Again, Mr. Stewart argues that Chatman's version of events cannot be reconciled with Anderson's so one on them must be lying.

The Mississippi Court of Appeals summarized the argument:

> ¶ 38. Maggett and Stewart complain that the prosecutors allowed Anderson to testify that he had not gone to Stewart's house at a certain point, after he supposedly admitted he had done so when he plead guilty to charges relating to the incident. This contention is based on a purported guilty plea transcript that is not found in the record, and we cannot consider evidence outside the record. *Galloway v. State*, 122 So. 3d 614, 638 (¶ 51) (Miss. 2013). Consequently[,] we find this claim to be without merit.

*Maggett*, 230 So. 3d at 733. He also raised this issue in his Petition for Post-Conviction Relief, and the Mississippi Supreme court found that the claims "were capable of determination at trial and/or on direct appeal," and Stewart "fail[ed] to show cause and actual prejudice to grant relief from the waiver." *See* Exhibit B.

A court must review a claim of prosecutorial misconduct in two steps. First, the court must decide whether or not the prosecutor made an improper remark. *United States v. Munoz*, 150 F. 3d 401, 414 (5th Cir. 1998). If the prosecutor made an improper remark, the court must evaluate whether

the remark affected the substantial rights of the defendant. *Id*. at 415; *Garza*, 608 F. 2d at 663. In reviewing whether statements made by a prosecutor were improper, the court must look at them in context. *United States v. Washington*, 44. F. 3d 1271, 1278 (5th Cir. 1995). Nothing in the record supports Jerry Stewart's contention that the prosecutor made improper remarks.

**Ground Four: Prosecutorial Misconduct During Examination of Witnesses**

In Ground Four of the instant petition, Mr. Stewart gives four examples of alleged prosecutorial misconduct during the examination of witnesses. First, during the examination of accomplice Anderson, the prosecutor asked about a man called Gerrell, who "was fired for being a corrupt police officer." Tr. 1169, Vol. XIV. There was no factual basis for this assertion; the trial court sustained Stewart's objection, denied his motion for a mistrial, and instructed the jury to disregard that the statement.

Second, during cross-examination of Charkita Primer, the prosecutor asked, "Are you aware of any property that Mr. Stewart has on Douglas Street?" Ms. Primer answered "No." Mr. Stewart states in the memorandum in support of his petition that the property was a "drug house" where the victim was taken, and the suggestion that he owned the property could implicate him in the murder and kidnapping. On direct appeal, the Mississippi Court of Appeals found the question to be improper, but held, "We cannot find that the prosecutor's insinuation here denied Stewart a fair trial." *Maggett v. State,* 2015-KA-pp215-COA at 16-17.

Mr. Stewart argues third and fourth that when the prosecutor cross-examined him, there were two instances where the State asked questions with no factual basis. Once, the prosecutor asked if his children had been failing in school "because they were living in the house with [him]." Tr. 1383-1384, Vol. 16. The prosecutor also asked him whether he had a night club, and he answered, "No ma'am." Tr. 1385, Vol. 16. He argues that these questions caused the jury to believe that he was a

poor influence on his children and that he was untruthful in his denial of owning a night club. The Mississippi Court of Appeals found the questioning to be improper, but denied the claims: (1) because the issues "were waived and are procedurally barred on appeal," (2) "The jury was properly instructed that remarks of counsel were not evidence and that it should disregard statements that were not based in evidence," and (3) the remarks did not "create an unjust prejudice against the accused" such that the jury's decision was influenced by that prejudice. *Maggett,* 2015-KA-00215-COA at 14-15. Taking these remarks in context, and considering that the court instructed the jury that counsel's remarks are not evidence, they did not affect Mr. Stewart's substantial rights. This ground for relief is without merit.

### Ground Five: Prosecutor Made Improper Remarks During Closing Arguments

In Ground Five, Mr. Stewart argues that the State made "false, impermissible, inflammatory and extremely prejudicial comments during its closing argument." *See* ECF doc. 2, p. 47. During the prosecutor's direct examination, Marcus Dockery testified that he received a phone call from "Deon" McKay during which a man grabbed the phone from McKay and said, "Somebody need to get my money or y'all going to find this bitch on the side of one of these back roads." Tr. Vol. X at 489-91. No evidence or testimony directly showed the identity of the man who grabbed the phone and made the threat. Instead, Stewart testified that Anderson made the threatening call. Tr. Vol. XVI at 1361. Nonetheless, during closing arguments, the prosecutor said:

> And remember that phone call that – I believe it was Marcus Dockery, got from Deon. When the other person grabbed the phone and said into the phone, if I don't get my money back you're going to find this bitch dead on a country road. *And I submit to you that person – that person was Jerry Stewart.* Tresten Chatman told that it was Jerry Stewart who had him make some calls from his phone. And Tresten Chatman told you he let Deon use his phone to make some calls when he was at the house because his phone stopped working or didn't have any more minutes on it, or something like that. *It was Jerry Stewart who said that.* And that's exactly what happened. Mr. McKay was found on a country road, and he was dead.

- 26 -

Tr. Vol. XVII at 1592 (emphasis added).

When a prosecutor's remarks during closing argument are both inappropriate and harmful, a defendant may be entitled to a new trial. *United States v. Simpson*, 901 F. 2d 1223, 1227 (5th Cir. 1990), *cert. denied*, 510 U.S. 983 (1993). A prosecutor's improper remarks standing alone, however, are insufficient to overturn a criminal conviction. *United States v. Young*, 470 U.S. 1, 11 (1985). Instead, a defendant must show that the prosecutor's remarks affected his substantial rights. *Simpson*, 901 F. 2d at 1227. "To determine whether the argument affected the defendant's substantial rights, [a court must] examine (1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt." *Id*; *United States v. Lowenberg*, 853 F. 2d at 302. "Criminal convictions are not to be lightly overturned on the basis of a prosecutor's comments standing alone." *United States v. Pineda-Ortuno*, 952 F. 2d 98, 106 (5th Cir.), *cert. denied*, 504 U.S. 928(1992). Hence, "[a] criminal defendant bears a substantial burden when attempting to show that prosecutorial improprieties constitute reversible error." *United States v. Bermea*, 30 F. 3d at 1563. "A conviction should not be set aside if the prosecutor's conduct….did not in fact contribute to the guilty verdict and was, therefore legally harmless." *United States v. Johnston*, 127 F. 3d 380, 390 (5th Cir. 1997), *cert. denied*, 522 U.S. 1152 (1998).

In this case, the prosecutor merely argued that, considering the all the testimony and evidence presented, Jerry Stewart was the person most likely to have made those remarks. The prosecutor was free to present that argument to the jurors – who were then free to give Mr. Stewart's self-serving testimony whatever weight they chose. They appear to have given it little credence, as they ultimately found him guilty. The prosecutor's statement was proper. For this reason, the Mississippi Supreme Court's denial of this claim of prosecutorial misconduct was not contrary to, nor an unreasonable application of, clearly established federal law. Nor was it an unreasonable determination of the facts

- 27 -

in light of the evidence presented. This claim for relief is without merit.

### Ground Six: Prosecutorial Misconduct by Personally Vouching for the Credibility of Its Two Most Important Witnesses

The State's case rested almost entirely on the testimony of two accomplice witnesses:

Chatman and Anderson. During closing argument, the prosecutor stated:

> And I submit to you that what we wanted to hear and what we wanted them to tell was the truth. They want to believe that there was something underhanded or something mighty suspicious going on because both of them said part of my deal, part of my obligation was that I had to come in here and testify truthfully. That is part of what they had to do. *And they came here and testified truthfully.*

Tr. Vol. VII at 1584 (emphasis added). Mr. Stewart argues that the highlighted part of the prosecutor's statement was "highly improper." Doc. 2 at 53. During Mr. Stewart's pursuit of post-conviction collateral relief, the Mississippi Supreme Court found this claim to be procedurally barred, holding that "the claims were 'capable of determination at trial and/or direct appeal'" and that he had not shown cause and actual prejudice to overcome the bar.

In any event, this claim fails on the merits. As set forth above, review of a charge of prosecutorial misconduct involves two steps. First, a court must decide whether the prosecutor made an improper remark. *See United States v. Fields,* 72 F.3d 1200, 1207 (5th Cir.), *cert. denied,* 519 U.S. 807, 117 S.Ct. 48, 136 L.Ed.2d 13 (1996). During cross-examination, no misconduct can arise from a question asked for a valid reason. *See United States v. Swanson,* 9 F.3d 1354, 1359 (8th Cir. 1993). During closing argument, the prosecutor "may not personally vouch for the credibility of a government witness, as doing so may imply that [she] ... has additional personal knowledge about the witness and facts that confirm the witness' testimony, or may add credence to such testimony." *United States v. Washington,* 44 F.3d 1271, 1278 (5th Cir.), *cert. denied,* 514 U.S. 1132, 115 S.Ct. 2011, 131 L.Ed.2d 1010 (1995). A prosecutor is not, however, "prohibited from 'recit[ing] to the jury those

inferences and conclusions [s]he wishes [the jury] to draw from the evidence so long as those inferences are grounded upon evidence.'" *Id.* The prosecutor "may even present what amounts to be a bolstering argument *if it is specifically done in rebuttal to assertions made by defense counsel in order to remove any stigma cast upon [her] ... or [her] ... witnesses.*" *United States v. Dorr,* 636 F.2d 117, 120 (5th Cir. Unit A Feb. 1981).

During closing arguments, each of the three defense attorneys argued and insinuated that Stewart's accomplices, Chatman and Anderson, lied during their testimony as a reward for implicating Stewart – for which they negotiated plea agreements with the State. *See, e.g.*, 1531, 1540-42, 1554-1560. In response, the prosecutor summarized the evidence and testimony in detail to argue that Chatman and Anderson were telling the truth. Tr. Vol. 17 at 1563-1584. Thus, as the prosecutor offered her argument "in rebuttal to assertions made by defense counsel in order to remove any stigma cast upon [her] … or [her] … witnesses," her argument is permissible. *Dorr, supra.* Hence, Mr. Stewart's claim regarding the prosecutor's witness bolstering statement during closing arguments is without merit.

**Ground Ten: Trial Court Knowingly Allowed the State to Sponsor False Testimony**

According to Mr. Stewart, during Chatman's guilty plea hearing, the prosecutor told the court that it could prove that Chatman fired the revolver four or five times – and that Anderson had revealed that information. Doc. 2-1 at 137-138. Chatman's counsel, however, insinuated that the statement was not true – that he fired the revolver only once. *Id.* at 138. Chatman later testified that he fired the revolver once, then passed it to Kelvin Taylor, who fired two more times. Tr. Vol 11 at 618, 621-. Anderson then testified that Chatman fired the revolver four or five times – and Kelvin Taylor never fired a shot. Thus, according to Mr. Stewart, one of these witnesses is lying, but the court nonetheless

permitted them to testify.

This argument is without merit. It is common for witnesses to give conflicting testimony, which can arise either from mistake or dishonesty. The court does not determine credibility of witnesses or decide facts in a jury trial. The jury, the finder of fact, must sift through the testimony, determine the credibility of the witnesses, weigh the evidence, and render a verdict. The Founders established in our Constitution that an accused has the right to a trial by jury in a criminal case. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury* of the State and district wherein the crime shall have been committed...." U.S. Const. amend. VI. (emphasis added). The requirement of a jury trial in a criminal case is applicable to the states through the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 156 (1968). It is the province of the jury to determine the facts in a criminal case – and apply to those facts to the law given by the court through jury instructions. Indeed, "[j]uries are typically called upon to render unanimous verdicts on the ultimate issues of a given case." *McKoy v. North Carolina*, 494 U.S. 433, 449, 110 S. Ct. 1227, 1236, 108 L. Ed. 2d 369 (U.S. 1990) (plurality opinion) (Blackmum, J., concurring). The jury in this case carried out its duty and rendered a verdict of guilty as to Mr. Stewart. This ground for relief is without merit.

For these reasons, the Mississippi Supreme Court's denial of these claims of prosecutorial misconduct was not contrary to, nor an unreasonable application of, clearly established federal law. Nor did it involve an unreasonable determination of the facts in light of the evidence presented. As such, Mr. Stewart is not entitled to federal *habeas corpus* relief on his claims in Grounds Two, Four, Five, Six and Ten of the instant Petition.

**Ground Twelve: Defective Indictment**

Mr. Stewart argues in Ground Twelve that "[t]he indictment charging Stewart with capital

murder violated Stewart's rights not to be placed in jeopardy twice by not identifying the victim of the underlying kidnapping." Doc. 2 at 82. He presented this ground for relief to the Mississippi Court of Appeals on direct appeal, arguing that his indictments for capital murder, "with the underlying crime of kidnapping, were fatally defective because they failed to explicitly specify that McKay was the victim of the kidnapping as well as the murder." *Maggett*, 230 So. 3d at 728. The Mississippi Court of Appeals denied his claim for relief, finding that Stewart did not raise any objection to the indictments before the trial court, and, as such, nonjurisdictional defects in the indictment may not be attacked for the first time on appeal absent a showing of cause and actual prejudice. *Id*. In addition, the Mississippi Court of Appeals noted that "[i]n capital-murder cases, unless the underlying felony is burglary, the underlying felony that elevates the crime to capital murder must be identified in the indictment along with the section and subsection of the statute under which the defendant is being charged. No further detail is required." *See Batiste v. State*, 121 So. 3d 808, 836 (Miss. 2013). The Mississippi Court of Appeals found Mr. Stewart's indictments to be satisfactory under *Batiste* and found the issue to be without merit. *Maggett* at 728-29.

The sufficiency of a state indictment is not a matter for federal *habeas corpus* relief unless the petitioner shows that the indictment was so defective that the convicting court had no jurisdiction. *Riley v. Cockrell,* 339 F.3d 308, 313-14 (5th Cir. 2003); *Williams v. Collins,* 16 F.3d 626, 637 (5th Cir. 1994) (citing *Yohey v. Collins,* 985 F.2d 222, 229 (5th Cir.1993); *McKay v. Collins,* 12 F.3d 66, 68 (5th Cir. 1994) (*citing Branch v. Estelle,* 631 F.2d 1229 (5th Cir. 1980)). "State law dictates whether a state indictment is sufficient to confer a court with jurisdiction." *Williams,* 16 F.3d at 637. Rule 14.1 of the Mississippi Rules of Criminal Procedure sets forth the required elements of an indictment under Mississippi law:

(1) The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts and elements constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them.

(2) An indictment shall also include the following:

(A) The name of the accused;

(B) The date on which the indictment was filed in court;

(C) A statement that the prosecution is brought in the name and by the authority of the State of Mississippi

(D) The county and, in two-district counties, the judicial district in which the indictment is brought;

(E) The date and, if applicable, the time at which the offense was alleged to have been committed;

(F) The signature of the foreperson of the grand jury issuing it; and

(G) The words "against the peace and dignity of the state

(3) The court, upon motion, may strike from the indictment any surplusage, including unnecessary allegations or aliases.

Under Rule 14.1 of the Mississippi Rules of Criminal Procedure, the indictment must include, *inter alia*, "a plain, concise and definite written statement of the essential facts and elements constituting the offense charged" and must "fully notify the defendant of the nature and cause of the accusation."

Count I of Mr. Stewart's indictment charged him his capital murder, charging that he:

did unlawfully, feloniously and without the authority of law and with or without deliberate design to effect death, kill Quenton Deon McKay while the said Kelvin Taylor and/or Jerry Undre Stewart and/or Ladell Maggett, Jr. and/or Tresten Chatman and/or Christopher Anderson, or either of them was/were engaged in the commission of the crime of kidnapping as set forth in the Mississippi Code of 1972, Annotated as amended, Section 97-3-53, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Mississippi

SCR, 2015-KA-00215-COA, Vol. 1, p. 21. At the time of Stewart's trial, the capital murder was defined as:

> The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases: [w]hen done with or without any design to effect death, by any person engaged in the commission of the crime of … *kidnapping* … or in any attempt to commit such felon[y].

Miss. Code Ann. § 97-3-19(2)(e) (emphasis added).  Clearly, Mr. Stewart's indictment informed him of both the statute under which he was charged, as well as the elements of the crimes charged.  Mr. Stewart argues that *Rowland v. State*, 98 So.3d 1032 (Miss. 2012) controls and holds that the victim of the underlying crime must be named in a capital murder indictment; however *Rowland* was explicitly overruled as to this issue in *Carson v. State*, 212 So.3d 22 (Miss. 2016).  In *Carson*, the Mississippi Supreme Court, citing *Batiste, supra*, held that the identity of the victim of the underlying crime in a capital murder case is not an element of the offense and need not be included in the indictment. *Carson v. State*, 212 So. 3d 22, 34 (Miss. 2016).  This issue is without substantive merit.

Jerry Stewart is not entitled to relief on Ground Twelve challenging the sufficiency of his indictment for capital murder because he has not shown that his indictment was so defective, that it deprived the state court or jurisdiction.  As the state appellate court had jurisdiction to consider the issue, the claim is not proper on federal *habeas corpus* review because he has not alleged the violation of a constitutional right.  He has not shown that the decision of the Mississippi Court of Appeals regarding this issue was contrary to, or an unreasonable application of, clearly established federal law as set forth by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence.  For these reasons, Mr. Stewart has is not entitled to relief on his claim in Ground Twelve.

**Ground Thirteen:  Sufficiency of the Evidence**

- 33 -

In Ground Thirteen, Jerry Stewart argues that the trial court committed reversible error in denying his "Motion for a Directed Verdict of Acquittal" at the close of the State's case in chief as well as his "Motion for Judgment of Acquittal Notwithstanding the Verdict" or "Motion for New Trial." He argues that "[t]his error on the part of the trial court warrants the reversal of Stewart's convictions, and ordering a new trial because the evidence or lack of evidence was such that reasonable and fair minded jurors could only find Stewart not guilty." *See* ECF doc. 1, p. 30. Mr. Stewart is not challenging the weight of the evidence, but its sufficiency.[8]

A claim challenging the sufficiency of the evidence can merit *habeas corpus* relief if the evidence, when viewed in the light most favorable to the State, is such that no reasonable finder of fact "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Marler v. Blackburn*, 777 F.2d 1007, 1011 (5th Cir. 1985). This standard of review "preserves the integrity of the trier of fact as the weigher of the evidence." *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir. 1983). This standard allows the trier of fact to find the evidence sufficient to support a conviction even if "the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992).

As set forth above, "where the state appellate court has conducted a thorough review of the evidence . . . . its determination is entitled to great deference." *Callins*, 998 F.2d at 276. Mr. Stewart's challenge to the sufficiency of the evidence rests primarily on discrepancies in the testimony two State witnesses, Chatman and Anderson. He argues that, due to these inconsistencies, the State lacked

---

[8] A challenge to the weight of the evidence is not a valid federal *habeas corpus* claim. *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985), *cert. denied*, 476 U.S. 1123 (1986) ("A federal *habeas* court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence….")

evidence with which to convict him for capital murder. *See* ECF doc. 2, pp. 73-85. Stewart also

argues that the Mississippi Supreme Court was faced with a "similar issue" in *Flanagan*. *Flanagan v.*

*State*, 605 So. 2d 753 (Miss. 1992). *Id.*

As discussed in detail above, the Mississippi Court of Appeals reviewed the evidence introduced

against Stewart at trial, particularly Chatman and Anderson's testimony, including their differing

versions of events. The Mississippi Court of Appeals thoroughly discussed Stewart's challenge to the

sufficiency of the evidence regarding the testimony of these two witnesses. *Maggett,* 230 So. 3d at

729-30. The court found that

> [w]e have previously observed that there is no Mississippi caselaw to support
> the contention that one accomplice cannot corroborate another, *Hendrix v. State*,
> 957 So. 3d 1023, 1028 (¶ 9) (Miss. Ct. App. 2007); but the State seems to accept
> that accomplices cannot corroborate one another, and so we assume that for the
> purposes of our analysis.

*Id* at 730. While the appellate court could not find the accomplice testimony to be corroborated, the

court found that, in light of the cautionary jury instruction given and the jury's vote to convict, the

question on appeal was "whether the accomplice testimony was so 'unreasonable, self-contradictory,

or substantially impeached' that a properly instructed jury could not find it sufficient to sustain a

conviction." *Id.* As the court noted, while the accounts did contradict each other on some of the

details, they were not self-contradictory. *Id.* "These disputes between the two witnesses presented a

question of credibility for the jury, and our standard of review does not permit this Court to substitute

our judgment for that of the jury on the question of credibility." *Id.* The Mississippi Court of Appeals

concluded that, regarding Chatman and Anderson, they were

> thoroughly cross-examined on their initial denials and on the inconsistencies
> between their testimonies at trial. The jury was also properly instructed that it
> should view the testimony of accomplices with 'great care and caution,' and it
> still elected to convict. We cannot find the convictions here to be unsupported
> by sufficient evidence.

- 35 -

*Id* at 731. The Mississippi Court of Appeals correctly deferred to the jury's role as finder of fact. Mr. Stewart has thus not overcome the deference this court must afford to the state appellate court, and this ground for relief is without merit.

### Ground Fourteen: Cumulative Error

Cumulative error can be an independent basis for *habeas corpus* relief, but only when "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for *habeas* purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (*citing Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992)). Meritless claims or claims that are not prejudicial cannot be cumulated, no matter the number raised. *Derden*, 978 F.2d at 1461. As discussed above, none of Mr. Stewart's claims has merit; as such, his claim for cumulative error must be dismissed. For this reason, the state appellate courts' resolution of Ground Fourteen was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. In addition, the decisions were not based on an unreasonable determination of the facts in light of the evidence. As such, Mr. Stewart is not entitled to federal *habeas corpus* relief as to his claim in Ground Fourteen of the instant Petition.

### Conclusion

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be denied. Under 28 U.S.C. § 2254(d) this court must defer to state court decisions on claims adjudicated on the merits in state court. Under the AEDPA, a federal court will not disturb a state court's application of law to facts – unless the state court decision was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court. None of the state courts' findings as to

all grounds raised in Mr. Stewart's petition met this standard. *See* 28 U.S.C. § 2254(d)(1); *see also Gachot v. Stalder*, 298 F.3d 414, 421 (5th Cir. 2002). Hence, Jerry Undre Stewart is not entitled to relief as to any of his claims in the instant petition for a writ of *habeas corpus*. A final judgment consistent with this memorandum opinion will issue today.

    **SO ORDERED**, this, the __12th__ day of August, 2021.

                    _____

                    SENIOR UNITED STATES DISTRICT JUDGE